**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLTON CLARK,<br><br>                Plaintiff,<br><br>   v.<br><br>STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF STATE POLICE,<br><br>                Defendant. | Civil Action No. 19-21238 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon Defendant State of New Jersey, Department of Law and Public Safety, Division of State Police's Motion for Summary Judgment (ECF No. 100) pursuant to Federal Rule of Civil Procedure (Rule) 56. Plaintiff Carlton Clark did not submit a brief in opposition but did file what the Court will construe as a Supplemental Statement of Disputed Material Facts. (ECF No. 106.) Defendant submitted a response to Plaintiff's filing. (ECF No. 108.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's Motion is **GRANTED**.

I.    **BACKGROUND**

A.    **Procedural Background**

Plaintiff filed a charge with the United States Equal Employment Opportunity Commission (EEOC) in July 2019.  (ECF No. 100-2 at 6; ECF No. 20 at 3; ECF No. 1 at 5).[1]  The EEOC declined to pursue Plaintiff's matter and issued a right to sue letter on September 12, 2019.  (ECF No. 100-2 at 6.)

Plaintiff filed his initial Complaint on December 10, 2019.  (ECF No. 1.)  He asserted claims under Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination (NJLAD).  (*Id.*)  On April 13, 2020, Defendant filed a Motion to Dismiss.  (ECF No. 7.)  Plaintiff opposed.  (ECF No. 15.)  On December 31, 2020, this Court granted the Motion to Dismiss without prejudice with respect to the Title VII claims—because it was unclear at the time whether the EEOC issued Plaintiff a right to sue letter—and with prejudice with respect to the NJLAD claim.  (ECF No. 20.)

Plaintiff filed an Amended Complaint on January 29, 2021.  (ECF No. 22.)  This operative pleading asserts Title VII claims on the basis of race and gender.  (*Id.* at 4-5.)  It alleges—from 2014 to the date of the pleading—that Defendant's representatives engaged in discriminatory conduct when issuing Plaintiff negative performance ratings, deciding to not promote Plaintiff, and commencing disciplinary proceedings against Plaintiff in retaliation for Plaintiff filing a complaint with Defendant's internal EEO office.  (*Id.* at 5, 9.)  The matter moved forward without any dispositive motion practice, and fact discovery closed on July 31, 2024.  (*See* ECF No. 89.)[2]

---

[1]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[2]    Plaintiff sought leave to file a Second Amended Complaint, which would have added claims under the Americans with Disabilities Act (ADA).  (ECF No. 68.)  However, the Magistrate Judge denied Plaintiff's request without prejudice because it was filed without inquiring whether

Following the close of discovery, the Magistrate Judge directed the parties to serve any summary judgment motions on each other by September 19, 2024, brief the motions, and file the papers all at once upon completion of the briefing.  (ECF No. 95.)  Defendant sent its summary judgment motion to Plaintiff on September 18, 2024.  (ECF No. 97.)  Plaintiff did not send a cross-motion or an opposition, but the Magistrate Judge gave Plaintiff another opportunity to send any opposition by November 22, 2024.  (ECF No. 99.)  Plaintiff failed to send any opposition to Defendant, so on December 2, 2024, Defendant filed its Motion for Summary Judgment on the docket.  (ECF No. 100.)  Plaintiff again did not file an opposition.  On April 2, 2025, this Court ordered Plaintiff to file any opposition within 30 days.  (ECF No. 101.)  In lieu of an opposition, Plaintiff filed a letter stating Defendant did not properly serve its Motion.  (ECF No. 102.)  The Court ordered Defendant to send Plaintiff copies of the Motion for Summary Judgment and file a certification of service, but the Court noted delays "appear attributable to Plaintiff[.]"  (ECF No. 104.)  The Court ordered Plaintiff to file any opposition by June 6, 2025, and noted that no additional extensions would be granted.  (*Id.*)  The Court made clear that "failure to file an opposition in accordance with . . . Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1 will result in the Court deciding Defendant's motion unopposed."  (*Id.*)  Defendant filed the certification of service.  (ECF No. 105.)  Plaintiff did not file an opposition brief but did file an eight-paragraph document labeled "Statement of Material Facts Supporting Plaintiff's Motion for Summary Judgement."  (ECF No. 106.)   As explained below, the Court will construe this

---

Defendant consented.  (ECF No. 73.)  The Magistrate Judge invited Plaintiff to request Defendant's consent and file a motion for leave to amend if Defendant did not consent.  (*Id.*)  Plaintiff took no further action.  Plaintiff's submissions related to any ADA claims, (*see* ECF No 106 at 4, 62-74), are therefore irrelevant, and the Court need not address them.

document as a Supplemental Statement of Disputed Material Facts. On June 13, 2025, Defendant filed a reply to Plaintiff's submission. (ECF No. 108.)

### B.    Factual Background[3]

Plaintiff, a Black man, received a Bachelor of Science degree in Business Administration from La Salle University in 1988. (ECF No. 100-3  ¶ 51; ECF No. 100-5 at 3.) Defendant hired Plaintiff in 2000 to provide information technology (IT) support to the New Jersey State Police. (ECF No. 100-3  ¶ 51.)    Plaintiff's original title was Administrative Analyst 2 (AA-2). (*Id.* ¶ 2.)

---

[3]    On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't,* 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)). Under the Federal Rules of Civil Procedure, however, "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)," then "the court may . . . consider the fact undisputed for the purposes of this motion." F.R.C.P 56(e). And under the Local Rules, a "responsive statement of material facts" must "address[] each paragraph of the movant's statement, indicating agreement or disagreement . . . ." L. Civ. R. 56.1(a). "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id.*; *see also Yocham v. Novartis Pharms. Corp.,* 736 F. Supp. 2d 875, 879 (D.N.J. 2010) ("[T]he consequence of the opponent's failure to address the movant's Statement of Material Facts Not in Dispute has long been clear, namely, the movant's facts, duly cited to the record of evidence, are deemed unopposed for purposes of adjudicating the motion."). Further, the Local Rules contemplate that a litigant must file an opposition brief along with a responsive statement of material facts. *See* L. Civ. R. 56.1(a) ("The opponent of summary judgment shall furnish, *with its opposition papers*, a responsive statement of material facts . . . .") (emphasis added). Here, Plaintiff has not filed an opposition brief, and he has failed to file a proper responsive statement of material facts because his eight paragraphs, (ECF No. 106), do not each correspond to or indicate agreement or disagreement with Defendant's 106 paragraphs, (ECF No. 100-3.) Therefore, given the ample notice provided to Plaintiff and the filing Plaintiff submitted, the Court will treat Defendant's submission as unopposed. *See Carter v. N.J. Dep't of Hum. Servs.*, Civ. No. 18-12469, 2020 WL 3427986, at *1 n.2 (D.N.J. 2020) (treating Statement of Undisputed Material Facts as admitted given Title VII plaintiff's inadequate submission). Because Plaintiff is *pro se*, however, the Court will consider his eight paragraphs, construe them as a Supplemental Statement of Disputed Material Facts, and evaluate them against Defendant's response to those statements (ECF No. 108-1.) *See Khan v. City of Bayonne,* Civ. No. 18-05825, 2021 WL 2709539, at *1 n.2 (D.N.J. June 30, 2021) (finding "any fact in Defendant's statement which is adequately supported by the record is deemed admitted" but deciding to "review[]" evidence  put forward by Plaintiffs even when they did not comply with Local Civil Rule 56.1(a) because they were *pro se*). To the extent Plaintiff intends his submission to be a Cross-Motion for Summary Judgment, it is denied because the deadline for opening briefs has long passed. (*See* ECF No. 95.)

At the time, there were four tiers of Administrative Analysts, with 1 being the highest and 4 being the lowest. (ECF No. 100-5 at 7.) Sometime in the early 2010s, Defendant reclassified its employment hierarchy, reversing the positions such that 4 was the highest and 1 the lowest. (*Id.*). Thus, Plaintiff became an AA-3. (*Id.*) Margaret Ross became head of Plaintiff's group, the Systems Support Unit (SSU), in 2012. (ECF No. 100-3 ¶ 4.)

Later in 2012, Plaintiff was reassigned internally within the SSU: he was moved from assisting the Identification and Information Technology Section (I&ITS) to the Special Investigations Service group. (*Id.* ¶ 8; ECF No. 100-5 at 29-30.) Plaintiff was told that he "lost credibility" with current I&ITS users. (ECF No. 100-3 ¶ 9; ECF No. 100-6 at 9.) Those users would "go to a different data manager to obtain their IT equipment" and refused to work with Plaintiff. (ECF No. 100-6 at 9.) Plaintiff was told his new role would begin on July 2, 2012. (*Id.*)

Defendant received several complaints about Plaintiff's job performance in this new role. On October 15, 2012, Plaintiff's colleague Catherine Paterno emailed Ross complaining that Plaintiff had yelled at her during a phone conversation and suggested that Plaintiff be referred to Defendant's employee assistance program. (ECF No. 100-3 ¶ 11; ECF No. 100-6 at 11.) Paterno also wrote that Ross should reconsider Plaintiff's recent reassignment because he "does not have the poise or the organization and technical skill sets" needed for the role. (ECF No. 100-6 at 11.) Two days later, Plaintiff was reprimanded by a different colleague because Plaintiff misrepresented whether he had completed an assignment. (ECF No. 100-3 ¶¶ 13-14; ECF No. 100-6 at 13.) The next day, that colleague sent a follow-up email to Plaintiff, expressing further frustration that the task was still not done and instructing Plaintiff to complete it immediately. (ECF No. 100-3 ¶¶ 15-17; ECF No. 100-7 at 2.)

The complaints continued. On December 4, 2013, Sergeant William White sent an email to Paterno and Ross complaining about Plaintiff's inability—despite his long tenure—to repair a user's laptop or provide sufficient information about the problem. (ECF No. 100-3 ¶¶ 18-20.) On January 15, 2014, Paterno emailed Plaintiff noting that he failed to complete a certain task, that of the portions of the task he did complete he did them incorrectly, and that his "lack of compliance to the directives and policies of our unit and our bureau [was] becoming a problem." (*Id.* ¶¶ 23-25; ECF No. 100-7 at 6.) On February 19, 2014, Plaintiff received a call from Detective Sergeant First Class Bryan Catterson with an urgent request and instead of helping, Plaintiff repeatedly asked how Catterson received Plaintiff's personal cellular number. (ECF No. 100-3 ¶¶ 27-29; ECF No. 100-7 at 8.) On April 20, 2016, Paterno issued an "Employee Performance Notice: Warning for Insubordination" to Plaintiff after he forewent a mandatory team meeting because he was "busy eating his salad." (ECF No. 100-7 at 10.)

In September 2016, Plaintiff was reassigned so that his area of responsibility included the Regional Operations Intelligence Center (ROIC) as well as several other facilities in downtown Trenton. (ECF No. 100-3 ¶ 36.) He was tasked with both ROIC and the Trenton facilities because someone of Plaintiff's seniority was expected to serve more employees than were housed within ROIC alone. (*Id.* ¶¶ 38-39.) However, the downtown Trenton facilities were removed from his roster because he was "having difficulty providing support to all of those locations." (*Id.* ¶ 40; ECF No. 100-7 at 17.) Plaintiff alleges that, sometime in late 2016 or early 2017, he filed a formal complaint with Defendant's internal EEO office based on the above conduct, though Plaintiff states the case was closed with no finding of liability in or about June 2017. (ECF No. 22 at 16.) The decision was affirmed through Defendant's internal appeals process in January 2018. (*Id.*)

Meanwhile, problems continued. On January 31, 2017, Detective Sergeant First Class James Carnival III emailed Plaintiff that Plaintiff rendered Carnival's workstations "useless" because he installed a printer without toner. (ECF No. 100-3 ¶¶ 41-43.) The following month, the assistant unit head, David Olsen, emailed Plaintiff expressing frustration because Plaintiff provided incorrect information regarding an IT ticket submission. (*Id.* ¶¶ 45-46; ECF No. 100-8 at 4.)

In 2018, Defendant solicited applicants for a pair of positions at the AA-4 level. (ECF No. 100-3 ¶ 48.) The positions called for prior experience "perform[ing] and supervis[ing] the analysis and evaluation" of an organization's IT needs and of supervising and evaluating subordinates. (*Id.* ¶ 49.) The positions required an ability to "take the lead in providing assistance to staff in the resolution of complex hardware/software problems"; a "[h]igh level of technical knowledge regarding [Defendant's] standard software/hardware" and the ability to "solve the more complex technical issues within the division." (*Id.* ¶ 50.) Three applicants were considered for the two roles: Plaintiff; Russel Balunis, Jr. (a white man); and Cecelia Rodgers (a Black woman). (*Id.* ¶ 51.) Plaintiff was not selected. (*Id.* ¶ 52.)

Plaintiff was the only AA-3 applicant, but he testified that this title difference would not have made the decision "automatic." (ECF No. 100-5 at 22.) Interview notes from Olsen and White revealed weaknesses in Plaintiff's candidacy. (*See* ECF No. 100-3 ¶¶ 54-61; ECF No. 100-8 at 10-11; ECF No. 100-9 2-3.) For example, Plaintiff could not identify the last project he had managed despite project management experience noted on his resume, did not approach any questions from a managerial—rather than technician—point of view, and could not answer certain technical questions. (ECF No. 100-3 ¶¶ 54, 56-57; ECF No. 100-8 at 10-11.)

7

On April 20, 2018, Plaintiff requested a transfer out of the SSU. (ECF No. 100-3 ¶ 62.) In his transfer request form, Plaintiff stated that his "rights as an employee have been violated on the basis of gender and racial bias by Margaret Ross – Unit Head." (ECF No. 100-9 at 5.) Plaintiff continued: "Ever since she became a supervisor of this unit there has been this personal attack and harassment from her regarding my work ethic . . . . Out of all the hundreds of requests that I have serviced for the unit over the years, a few of these incidents were being used to question my character and integrity." (*Id.*) Plaintiff also stated there were no opportunities for growth given that he was not selected for the promotion. (*Id.*) Ross approved the request but noted the facts underlying Plaintiff's reasons for requesting transfer were inaccurate. (*Id.*) Plaintiff testified that Ross disliked him and wanted him out of the SSU. (ECF No. 100-3 ¶ 90.) However, Captain Denman Powers ultimately denied the request due to the unit's operational needs. (ECF No. 100-9 at 5.) Plaintiff testified that two other employees who were disliked by Ross, Joanna Vega and Robert Hanna, were able to transfer out. (ECF No. 100-3 ¶ 91; ECF No. 100-5 at 17.) But Vega, a Hispanic woman, was not an AA-3 and Hanna, a white man, transferred out before Plaintiff filed his transfer request. (ECF No. 100-3 ¶¶ 68-69; ECF No. 100-5 at 6, 16-17.)

Sometime later in 2018, Plaintiff filed a second discrimination complaint with Defendant's internal EEO. (ECF No. 22 at 17; ECF No. 106 at 76.)[4] Meanwhile, the workplace complaints directed at Plaintiff continued. In May 2018, Plaintiff was found working on a user's laptop that was on Defendant's obsolete list when Plaintiff instead should have removed the device from service and guided the employee through the IT purchase process. (ECF No. 100-3 ¶ 70; ECF No.

---

[4]    It appears that this complaint was resolved on May 27, 2022, when Plaintiff was notified that the Defendant's EEO found Plaintiff's allegations unsubstantiated, except for one comment by Margaret Ross that may have implicated the New Jersey State Policy Prohibiting Discrimination in the Workplace, but the EEO could not implement any corrective action because Ross had retired. (ECF No. 106 at 76-77.)

100-9 at 10.)  In September 2018, Plaintiff attempted to send a computer to an outside vendor with the hard drive still installed, and when Olsen reminded Plaintiff that this was prohibited for security reasons, Plaintiff responded that removing a hard drive was difficult.  (ECF No. 100-3 ¶ 71.) Several months later, Plaintiff copied external individuals on an email despite having been instructed not to on multiple occasions.  (*Id.* ¶¶ 72-73.)  Olsen emailed Plaintiff on May 9, 2019, noting that Plaintiff had taken an inordinate amount of time to configure a group of printers. (*Id.* ¶¶ 76-77.)  On June 18, 2019, Rodgers reported that Plaintiff left a user's issue unresolved for 21 days, that the user avoided submitting another ticket during that period because the user was worried Plaintiff would be assigned the technician again, and that the task took Rogers and another colleague under three hours to complete.  (*Id.* ¶¶ 78-82.)  In June 2019, Plaintiff told Olsen false information on multiple occasions to cover up mistakes.  (*See id.* ¶¶ 83-89.)

In June 2020, Ross retired.  (*Id.* ¶ 92; ECF No. 100-5 at 11.)  In September 2020, Plaintiff filed a renewed transfer request.  (ECF 100-3 ¶ 95.)  It was approved by the first two requisite layers, but the Commanding Officer and Branch Commander wrote that it would be considered in accordance with operational needs.  (ECF No. 100-11 at 5.)  Plaintiff was offered a transfer in 2023 but refused.  (ECF 100-3 ¶ 98.)

At the same time as the transfer process took place, Plaintiff underwent disciplinary proceedings related to all the above conduct.  Defendant initiated disciplinary matters on account of Plaintiff's "incompetency, inefficiency, or failure to perform duties; inability to perform duties; and neglect of duty" in violation of various provisions of the New Jersey Administrative Code. (*Id.* ¶ 100; ECF No. 100-11 at 7-10.)  Defendant initiated at least four disciplinary matters in 2018 and 2019 against Plaintiff, with proposed punishments of a 10-day suspension, 20-day suspension, 45-day suspension, and termination, respectively.  (ECF No. 100-7 at 22-23; ECF No. 100-11 at

11.)  Plaintiff was found liable in each of the matters.  (*See* ECF No. 100-11 at 11 (describing Plaintiff as "Appellant").)

On February 16, 2021, while the matters were on appeal, Plaintiff executed a settlement agreement stipulating to a 45-day suspension without pay and settling the four pending disciplinary actions.  (ECF 100-3 ¶ 101; ECF No. 100-11 at 11-13.)  In return for the reduction in penalty, Plaintiff waived "[a]ny and all claims . . . including . . . those with respect to [Plaintiff's] employment or the terms and conditions . . . of [Plaintiff's] employment [that Plaintiff has] against [Defendant,] including . . . all claims under Title VII . . . ."  (ECF No. 100-11 at 12.)  And the waiver made clear that Plaintiff "specifically release[s]" Defendant "from any and all claims based upon any allegation of employment discrimination, including . . . discrimination on the basis of race, color, [and] sex."  (*Id.* at 13.)  The release included "all claims . . . involving any continuous effects of actions or practices which arose prior to" February 16, 2021.  (*Id.*)  Plaintiff consulted with his union representative several times, and they both signed the document.  (ECF No. 100-5 at 9; ECF No. 100-11 at 13.)  As of April 29, 2024—the date of Plaintiff's deposition—Plaintiff remains employed with Defendant.  (ECF No. 100-3 ¶ 106; ECF No. 100-5 at 2-3.)

## II.    **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

10

it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023) ("In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous: the party 'must point to concrete evidence in the record'—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995))).  "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

## III.  <u>DISCUSSION</u>

Defendant argues its Motion should be granted because Plaintiff's promotion, disparate treatment, and retaliation claims under Title VII are time-barred, (ECF No. 100-2 at 8-9), Plaintiff has waived those claims through his settlement agreement, (*id.* at 9-10), and each of the claims fails on the merits, (*id* at 11-29.)  The Court need not address each claim because it agrees with Defendant on the issue of waiver.

Defendant argues that "Plaintiff knowingly and voluntarily waived his right to pursue the Title VII claims in this action when he entered into the February 2021 settlement agreement" several weeks after filing the operative Amended Complaint in January 2021.  (*Id.* at 9-10 (citing ECF No. 100-11 at 7-13).)  Plaintiff has not submitted an opposition brief, and none of his eight paragraphs in the Supplemental Statement of Material Facts addresses the waiver issue.  (*See generally* ECF No. 106.)

In the Title VII context, a waiver is valid if it was "voluntary and knowing." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n.15 (1974).  "[T]he determination of whether a waiver has

been 'knowingly and willfully' made has been predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed." *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988). "[A]n employee's rights under Title VII are not susceptible of prospective waiver." *Alexander*, 415 U.S. at 51-52. And when considering whether an employee can waive past conduct, the Court must consider "general principles of contract construction such as the clarity and lack of ambiguity of the language [in the release] . . . and the absence of fraud or undue influence" in the execution process. *Coventry*, 856 F.2d at 522. But "[t]he validity of a [Title VII release] 'does not end with the evaluation that would be applied to determine the validity of a contract.'" *St. Louis v. New Hudson Facades, LLC*, Civ. No. 23-04516, 2024 WL 3625171, at *4 (E.D. Pa. Aug. 1, 2024) (quoting *Coventry*, 856 F.2d at 523.) "In light of the strong policy concerns to eradicate discrimination in employment, a review of the totality of the circumstances, considerate of the particular individual who has executed the release, is also necessary." *Coventry*, 856 F.2d at 522-23. Relevant factors include:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of the plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Maloney v. Bank of New York Mellon*, Civ. No. 15-06308, 2016 WL 4951017, at *2 (D.N.J. Sept. 15, 2016) (citing *Coventry*, 856 F.2d at 524); *Cf. Miller v. Campbell Soup Co. Ret. & Pension Plan Admin. Comm.*, No. 24-1812, 2025 WL 416090, at *2-3 (3d Cir. Feb. 6, 2025) (finding release

signed by *pro se* plaintiff valid upon application of *Coventry* factors and affirming summary judgment).[5]

Here, the only reasonable conclusion is that Plaintiff waived his Title VII claims knowingly and voluntarily. No reasonable jury could conclude otherwise. Plaintiff is college-educated and has worked as an IT employee with Defendant for over 20 years before executing the release. (ECF No. 100-5 at 3.) While the record does not provide a specific timeframe leading up to the release, it is clear Plaintiff had sufficient time to make, and played an active role in making, an informed decision about whether to sign the release given that he "had several conversations" with his union representative about the release. (*Id.* at 9.) The settlement agreement is explicit that Plaintiff would be releasing all Title VII claims that Plaintiff was aware of prior to the execution of the agreement. Indeed, the agreement states Plaintiff "hereby release[s] and forever discharge[s] the State of New Jersey, the Division of State Police . . . from the following up to and as of the date of the execution of this Agreement: Any and all claims . . . including those with respect to [Plaintiff's] employment or the terms and conditions . . . of [Plaintiff's] employment [that Plaintiff has] against [Defendant,] including . . . all claims under Title VII . . . ." (ECF No. 100-11 at 12.) The waiver goes on to "specifically release" Defendant "from any and all claims based upon any allegation of employment discrimination, including . . . discrimination on the basis of race, color, [and] sex." (*Id.* at 13.)

---

[5]      *Coventry* was decided in the context of an Age Discrimination in Employment Act (ADEA) claim, but the court noted its analysis was grounded in claims arising under Title VII. *Coventry, v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988). And the Third Circuit has continued to draw on *Coventry* and its progeny when evaluating Title VII waivers. *See, e.g.*, *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 730-31 (3d Cir. 2005) (citing *Coventry*, 856 F.2d at 522-523). Waiver of ADEA claims, however, is now evaluated under a standard established by the Older Workers Benefit Protection Act. *See Francois v. 160 Frontage Road, LLC*, Civ. No. 19-06787, 2020 WL 907771, at *2 n.2 (D.N.J. Feb. 24, 2020).

The record does not indicate Plaintiff was represented by or consulted with an attorney, but as discussed Plaintiff repeatedly consulted with his union representative who also signed the agreement. (ECF No. 100-5 at 9; ECF No. 100-11 at 13.) And, as here, when a plaintiff "provides no facts indicating that he did not understand the [a]greement or that he was prohibited from seeking the aid of counsel," the fact that counsel was not consulted does not negate a finding of valid waiver. *Weinberg v. Interep Corp.,* Civ. No. 05-5458, 2006 WL 1096908, at *4-5 (finding plaintiff knowingly and voluntarily waived right to bring age discrimination claim under the NJLAD and granting summary judgment for defendant); *see also Francois v. 160 Frontage Road, LLC*, Civ. No. 19-06787, 2020 WL 907771, at *2 (D.N.J. Feb. 24, 2020) (granting unopposed motion to dismiss where *pro se* "plaintiff was represented by his union representative" when executing NJLAD release). Finally, in exchange for Plaintiff's release, Plaintiff was able to significantly reduce his disciplinary penalties—including avoiding termination. *See EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 447, 450-451 (3d Cir. 2015) (finding consideration adequate when at-will employees released Title VII claims in return for conversion into independent contractor roles instead of termination and noting that the employees were not "entitled to . . . continued employment").

In addition to the factors discussed in *Coventry*, the Court finds relevant the fact that Plaintiff filed his Amended Complaint just weeks before executing the Settlement Agreement. (*See* ECF No. 22 at 1, 7; ECF No. 100-11 at 13.) This timeline indicates that Plaintiff was aware of his pending employment discrimination claims when he decided to waive those very claims. Plaintiff provides no evidence to dispute this or any of *Coventry* considerations and fails to address the waiver issue anywhere in his eight paragraphs.

Therefore, based on the totality of the circumstances, the Court finds that Plaintiff knowingly and willfully waived his Title VII claims, and that no reasonable juror could find to the contrary. Plaintiff has therefore waived the ability to pursue Title VII claims related to instances of alleged discrimination that predated February 16, 2021. Because all of the Title VII claims— failure to promote, disparate treatment, and retaliation—in Plaintiff's January 2021 pleading necessarily predate that agreement, those claims fail as a matter of law.

## IV.    **CONCLUSION**

For the foregoing reasons, and other good cause shown, Defendant's Motion for Summary Judgment (ECF No. 100) is **GRANTED**. An appropriate Order follows.


Dated: December 9, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE